UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-CV-22883-SCOLA/GOODMAN

CENTENNIAL BANK,

      Plaintiff,

v.

M/V "WHY NOT," her engines, machinery,
tackle, apparel, boats, furniture, equipment,
rigging, freights, and all other appurtenances,
etc., *in rem*, and WHY NOT I, LLC, *in personam*,

      Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON CENTENNIAL'S
MOTION FOR ATTORNEY'S FEES AND PRE-JUDGMENT INTEREST**

In this maritime foreclosure action, the Court entered a final default judgment in

favor of Plaintiff Centennial Bank ("Centennial" or "Plaintiff") and against Defendants

M/V "Why Not" ("the Vessel")[1] and Why Not I, LLC ("the LLC" and collectively,

"Defendants") in the amount of $147,372.01. [ECF No. 30, p. 1]. Thereafter, the U.S.

Marshal sold the Vessel to Plaintiff at a judicial sale. [ECF Nos. 41; 44].

Centennial now seeks to recover attorney's fees and pre-judgment interest [ECF

No. 48] pursuant to the fee provisions in the preferred ship's mortgage ("mortgage") [48-

_____

[1]       The Vessel is a 2000 54-foot Sea Ray Sundancer motor yacht. [ECF No. 1, ¶ 4].

2] and the promissory note [48-1]. In support of its fees motion, Centennial submits copies of the mortgage, the promissory note, a detailed declaration from one of its attorneys, and billing records. [ECF Nos. 48-1–48-3]. At the Undersigned's direction [ECF No. 51], Plaintiff filed a supplemental memorandum [ECF No. 52] and unredacted time entries under-seal [ECF No. 53].

Defendants have not responded to Plaintiff's fees motion (or otherwise participated in this lawsuit) and the response deadline has passed.

Initially, Centennial sought to recover a total of $100,499.44, consisting of $59,944.00[2] in attorney's fees and $40,555.44 in pre-judgment interest. [ECF No. 48]. However, in its supplemental memorandum, Centennial reduced its requested pre-judgment interest to $9,531.20, due to an oversight. [ECF No. 52, p. 2 ("Upon further analysis of Mr. Tuman's calculations and the Account Overview Report, it has been discovered that the judgment amount of $147,372.01 already included pre-judgment interest calculations through a payoff date of January 30, 2023.")].

Senior United States District Judge Robert N. Scola, Jr. referred this matter to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 49].

---

[2]    This fee request includes $184.00 in expenses [ECF No. 48-3, p. 22], which the Undersigned will address separately. Thus, Centennial's *actual* fee request is $59,760.00 ($59,944.00 minus $184.00).

Having reviewed the motion [ECF No. 48], the supplemental memorandum [ECF No. 52], the under-seal unredacted time entries [ECF No. 53], and the supporting exhibits [ECF Nos. 48-1–48-3], the Undersigned **respectfully recommends** that the motion be **granted in part and denied in part**. The Court should award Centennial: (1) **$36,140.00** in attorney's fees with no expenses ($23,804.00 less than the fees and expenses requested) and (2) **$9,531.20** (the revised, reduced amount requested) in pre-judgment interest.

## I.  Analysis

### a.  Entitlement

The party seeking attorney's fees bears the burden of establishing entitlement. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also A.C.L.U. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). "Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or **(3) there is a contract providing for the indemnification of attorneys' fees**." *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) (emphasis added).

Here, Plaintiff relies on provisions in the mortgage and promissory note. The mortgage states, in relevant part, as follows:

> 19.  LATE CHARGES AND ATTORNEY'S FEE: You agree to pay any late charges that become due under the Debt. **If proceedings are brought**

**to foreclose this mortgage, you agree to pay attorney's fees and court costs**.

24.    CHOICE OF LAW: This mortgage is subject to substantive laws of the State of Florida except to the extent it is governed by the laws of the United States.

[ECF No. 48-2, ¶¶ 19, 24 (emphasis added)].

The promissory note contains the following relevant provisions:

**INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate of this Note shall be increased to 18.000% per annum based on a year of 360 days**. **However, in no event will the Interest rate exceed the maximum interest rate limitations under applicable law**.

*** 

ATTORNEY'S FEES; EXPENSES. **Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses**, which includes, subject to any limits under applicable law, **Lender's reasonable attorney's fees and Lenders legal expenses** whether or not there is a lawsuit, including reasonable attorney's fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. **If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law**.

*** 

GOVERNING LAW. This Note will be governed by [f]ederal [l]aw applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This note has been accepted by Lender in the State of Florida.

[ECF No. 48-1, pp. 2–3 (emphasis added)].

The Undersigned finds that the plain language of the mortgage and the promissory note entitle Plaintiff to recover its attorney's fees and court costs.

**b.    Amount**

Having determined entitlement, the Undersigned will now address the requested amounts. As noted above, Plaintiff seeks to recover $59,944.00 in "attorney's fees" ($59,760.00 in fees plus $184.00 in expenses) and a reduced, revised $9,531.20 in prejudgment interest. [ECF Nos. 48; 52].

Plaintiff states (without citation to legal authority) as follows:

It is important to note in this matter that **Defendant Why Not knowingly agreed to pay <u>all</u> attorney's fees and in a foreclosure action, not limited to reasonableness**:

> LATE CHARGES AND ATTORNEY'S FEE: You agree to pay any late charges that become due under the Debt. **If proceedings are [brought to] foreclose this mortgage, you agree to pay attorney's fees and court costs**.

*See* Exhibit B, Mortgage ¶ 19 . . . . Moreover, Defendant Why Not has not entered any appearance or filed any court paper in this matter. . . . Therefore, **Defendant Why Not has waived any right to object or contest the reasonableness or amount of attorney's fees incurred by Plaintiff**.

[ECF No. 48, p. 5 (emphasis added)].

To the extent Plaintiff is arguing that its fee request is not constrained by reasonableness, that argument is not well taken. First, Plaintiff does not cite to *any* legal

authority for that proposition.[3] Second, even where a contractual fee provision permits the recovery of all attorney's fees,[4] courts in this Circuit still apply a reasonableness standard to the awarded fees.

As one court explained:

> Where, as here, "a fee-shifting . . . contract triggers a court-awarded fee, **the trial court is constrained [under Florida law] in setting a fee that must be reasonable**." *First Baptist Church of Cape Coral, Fla., Inc. v. Compass Const., Inc.*, 115 So. 3d 978, 982 (Fla. 2013); [*MWH Constructors, Inc. v. Brown & Brown Elec., Inc.*, No. 17-80902-CIV, 2018 WL 6807401, at *2 (S.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, No. 9:17-CV-80902, 2018 WL 6807317 (S.D. Fla. Sept. 27, 2018)] (finding that **plaintiff, as prevailing party, was entitled to recover "reasonable" attorneys' fees based on parties' agreement that defendant would reimburse "all of [plaintiff's] costs and damages, including attorney's fees, incurred as a result of [d]efendant's breach**"). And, "[j]ust as a federal court must apply state law

---

[3]    To properly raise an argument, a litigant must support the argument with factual and **legal authority**. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue). Thus, when a litigant raises an argument only generally and fails to offer specific factual contentions **or fails to support the argument with legal authority**, a court may summarily reject the argument. *See United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases).

[4]    Here, the mortgage does not mention the reasonableness of the fee award ("If proceedings are brought to foreclose this Mortgage, you agree to pay attorney's fees and costs" [ECF No. 48-2, ¶ 19]) but the promissory note *does* include a reasonableness modifier ("Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's **reasonable attorneys' fees** and Lender's legal expenses whether or not there is a lawsuit[.]" [ECF No. 48-1, p. 2 (emphasis added)]). In any event, and for the reasons discussed in this Report and Recommendations, both the mortgage and the promissory note are subject to a reasonableness inquiry.

to determine whether a party is entitled to fees, it must also apply state law to resolve disputes about the reasonableness of fees." *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) (footnote omitted).

*Plum Creek Tech., LLC v. Next Cloud, LLC*, No. 8:19-CV-1974-T-60CPT, 2020 WL 3317897, at *2 (M.D. Fla. June 3, 2020), *report and recommendation adopted*, No. 8:19-CV-1974-T-60CPT, 2020 WL 3288033 (M.D. Fla. June 18, 2020) (emphasis added).

Here, both the mortgage and the promissory note are governed by Florida law, to the extent not preempted by federal law. [ECF Nos. 48-1, p. 3; 48-2, ¶ 24]. In this instance, federal law and Florida law follow the same approach: "In calculating attorney fee awards, Florida [c]ourts have 'adopted the federal lodestar approach as the foundation for setting reasonable fee awards.'" *MWH Constructors, Inc.*, 2018 WL 6807401, at *2 (quoting *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985))). Accordingly, the Undersigned will evaluate the reasonableness of Plaintiff's fee request using the lodestar method (discussed below).

Moreover, although Defendants failed to respond to the fees motion (or otherwise participate in this case), the Court must still ensure that the fees it awards are reasonable. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("[T]he Court has an independent obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant

to the cost statute."); *see also Kelly v. Lee Cnty. R.V. Sales Co.*, No. 8:18-CV-424-T-27JSS, 2021 WL 3111553, at *2 (M.D. Fla. July 22, 2021) (reducing hourly rates of two timekeepers despite no challenge to the hourly rates by the opposing party).

### 1.      Attorney's Fees

As noted above, the Court must determine whether the requested fee amount is reasonable. Under the lodestar method, reasonable attorney's fees are calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley*, 461 U.S. at 43).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). This lodestar amount may then be adjusted upward or downward based upon other considerations. *Hensley*, 461 U.S. at 433–37. The moving party bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *Barnes*, 168 F.3d at 427.

### a)      Reasonable Hourly Rate

The Court must evaluate the reasonableness of the requested hourly rates. The Eleventh Circuit defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by lawyers with reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 895–

96 n.11). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* at 1302 (citation omitted).

In determining the prevailing market rate, the Court should consider several factors, including: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (discussing factors set out in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974)).

Here, Centennial seeks to recover for the time expended by five timekeepers: two attorneys and three paralegals. [ECF No. 48-3, ¶¶ 14–21]. Attorney Michael Karcher's hourly rates were $525.00 and $625.00. He "has been a regular practitioner of maritime law for over 30 years." *Id.* at ¶ 15. Attorney Serena Witter billed at hourly rates of $580.00 and $600.00. She "ha[s] been practicing in complex commercial litigation for 16 years and in maritime law for 8 years." *Id.* at ¶ 14.

The Undersigned finds the hourly rates for the attorney timekeepers to be excessive. In *Vice City Marina, LLC v. Philippians, LLC*, a maritime lien enforcement action where the plaintiff obtained a default judgment, Chief United States Magistrate Judge Edwin G. Torres reduced the requested $500.00 hourly rate for two attorneys with 12 years and 20 years of experience. No. 20-23800-CIV, 2021 WL 1739294, at *4 (S.D. Fla. Mar.

18, 2021), *report and recommendation adopted*, No. 20-23800-CIV, 2021 WL 1739026 (S.D. Fla. May 3, 2021). Judge Torres explained that "[t]he rate for [the attorney with 20 years' experience] [was] adjusted to $400 as [the] [p]laintiff provide[d] no cases where he received a higher rate in a maritime default judgment case like this" and "[the attorney with 12 years' experience]'s rate [was] adjusted to $350 as [the] [p]laintiff provide[d] no justification as to why his rate should be the same as the more experienced [20-year attorney]." *Id.*

Similarly, in *Desantis v. Atwood*, the plaintiff sought an hourly rate of $450 for an attorney with "more than 40 years of experience practicing maritime law" who "ha[d] handled more than 25 cases involving the arrest of maritime vessels." No. 20-CV-62004, 2022 WL 787973, at *2 (S.D. Fla. Mar. 2, 2022), *report and recommendation adopted sub nom. DeSantis v. Blackened Dolphin*, No. 20-62004-CIV, 2022 WL 783194 (S.D. Fla. Mar. 15, 2022). The Court reduced this requested hourly rate to $375.00. *Id.* at *4. In doing so, the Court observed that although the attorney had "substantial legal experience," "the legal skills needed in [the] case f[e]ll within the usual realm of maritime law and arrest of a vessel and d[id] not warrant a higher hourly rate of $450." *Id.* at *3. The Court also noted that other courts had awarded $300.00 and $400.00 hourly rates to attorneys with comparable years of experience. *Id.*

Lastly, in *Seacoast Nat'l Bank v. M/Y Viaggio*, as in the instant case, the plaintiff brought an "action to foreclose [a] [v]essel's [m]ortgage, arrest the [v]essel, and sell the

[v]essel to satisfy the outstanding indebtedness. No. 22-CV-62311, 2023 WL 6930685, at *1 (S.D. Fla. Oct. 2, 2023), *report and recommendation adopted*, No. 22-CV-62311-RAR, 2023 WL 6908985 (S.D. Fla. Oct. 19, 2023). After obtaining a default judgment, the plaintiff sought to recover attorney's fees pursuant to a mortgage, promissory note, and commercial guarantees. *Id.* at *1–2.

The plaintiff sought a $600.00 hourly rate for an attorney with 24 years of legal experience and a $500.00 hourly rate for an attorney with 11 years of legal experience. *Id.* at *3. This Court noted that:

> Other than the statement in [an attorney's] affidavit, **[the] [p]laintiff provide[d] no evidence of whether [the attorneys'] requested hourly rates [were] within the realm of hourly rates charged by other attorneys in Florida with the same amount of experience and qualification**. For example, the [m]otion d[id] not cite any examples of cases in which [either attorney] ha[d] been awarded their requested rates (or any other rates). Nor d[id] the [m]otion cite to decisions awarding fees to other attorneys in similar matters or attorneys of similar experience.

*Id.* at *3 (emphasis added).

The Court also noted that "the work performed in [the] case [was] within the typical range of similar cases and [did] not find any reason why the work required in this specific case would justify a higher rate, particularly in light of the fact that the case resulted in a default judgment." *Id.* at *4. Ultimately, the Court awarded $450.00 to the attorney with 24 years of experience and $375 to the attorney with eleven years of experience.

Similarly here, although Plaintiff submitted the declaration of attorney Serena Witter, who attested that "the fees reflected the regular hourly rates normally charged to this client for these services" and that "[t]hese rates fall within the customary rates charged by admiralty lawyers, especially in the practice of matters involving large luxury yachts" [ECF No. 48-3, ¶¶ 8, 13], Plaintiff has not submitted any cases where its attorney timekeepers (or attorneys of comparable background and experience) were awarded the rates requested in this case.

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Centennial has not supported the reasonableness of its requested hourly rates beyond attorney Witter's declaration. Additionally, the Undersigned notes that the instant case was a relatively **run-of-the-mill** maritime foreclosure action, which Defendants failed to contest, resulting in a garden-variety default judgment.

Based on the foregoing cases and the Undersigned's own knowledge of reasonable hourly rates in the South Florida market, the Undersigned **respectfully recommends** that the District Court award Plaintiff an hourly rate of **$450.00** for attorney Karcher and **$375.00** for attorney Witter.

Paralegals Luciene Grubbs, Janet Hart, and Melissa Baum billed at hourly rates of $300.00 and $315.00. Ms. Grubbs has been a licensed attorney in Brazil since 2007 and has worked as a paralegal in the United States since 2019. *Id.* at ¶ 19. Ms. Hart has worked "as a litigation legal assistant and paralegal for twenty years" and Ms. Baum has been "a legal assistant and paralegal for seven years." *Id.* at ¶¶ 20–21.

The Undersigned finds the requested paralegal hourly rates of $300.00 and $315.00 to be excessive. As with the attorney hourly rates, Plaintiff has not submitted any cases where its paralegals (or paralegals with comparable experience) have been awarded these rates. The Undersigned finds that hourly rates of **$125.00** for paralegal Grubbs and **$100** for paralegals Hart and Baum to be more in-line with paralegal hourly rates approved by Courts in this District.[5]

In sum, the Undersigned **respectfully recommends** that the District Court award the following hourly rates to Plaintiff's timekeepers: **$450.00** for attorney Karcher, **$375.00** for attorney Witter, **$125.00** for paralegal Grubbs, and **$100** for paralegals Hart and Baum.

---

[5]     *See, e.g., Vice City Marina, LLC*, 2021 WL 1739294, at *4 (finding paralegal hourly rates of $75.00 and $125.00 to be reasonable); *Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-CIV, 2019 WL 383868, at *6 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted sub nom. Capitol Specialty Ins. Corp. v. Ortiz by & Through Corona*, No. 17-23329-CIV, 2019 WL 367916 (S.D. Fla. Jan. 30, 2019) ("We . . . find that [the] requested hourly rate of $245 . . . is excessive for a paralegal position and, as a result, we reduce the rate requested to $100."); *Barclays Bank PLC v. M/Y We Won*, No. 09-60652-CIV, 2010 WL 2925179, at *1 (S.D. Fla. June 30, 2010), *report and recommendation adopted sub nom. Barclays Bank PLC v. Motor Vessel M/Y We Won*, No. 09-60652-CIV, 2010 WL 2925166 (S.D. Fla. July 22, 2010) (approving $100.00 hourly rate for paralegals in intervenor plaintiff's action to foreclose on a ship's mortgage).

**b)      Reasonable Number of Hours**

The Court must next evaluate the reasonableness of the total hours expended by Centennial's timekeepers. The moving party bears the burden of providing the Court with sufficiently detailed records so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303; *see also Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action." (citing *Barnes*, 168 F.3d at 427, 432–33)).

The party requesting fees must exercise "billing judgment" and must exclude hours from its fees motion that would be unreasonable to bill a client, and therefore to one's adversary, "irrespective of the skill, reputation, or experience of counsel." *Norman*, 836 F.2d at 1301.

In determining the number of hours reasonably expended, the Court must exclude "excessive, redundant or otherwise unnecessary hours" from those claimed. *Id.* at 1303. This task may be accomplished by either applying an hour-by-hour analysis or making an across-the-board cut. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Judges "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Ultimately, the computation of

a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

Centennial submitted billing records which reflect 137.75 hours ($69,848.75) of attorney and paralegal time. [ECF No. 48-3, p. 22]. From this amount, Centennial *voluntarily* reduced its requested hours by 18.25 hours[6] ($10,088.75). *Id.* Thus, Centennial is seeking to recover 119.50 hours (137.75 minus 18.25) or $59,760.00 ($69,848.75 minus $10,088.75).

The Undersigned is mindful that Centennial has voluntarily made an 18.50-hour reduction to its fee request. Even so, the Undersigned finds the remaining 119.25 hours (137.75 minus 18.50) to be excessive in the instant case where Defendants never appeared in the case, Plaintiff obtained a default judgment, and there are presently only 53 docket entries on CM/ECF. Having reviewed the billing records [ECF No. 48-3, pp. 9–22] and other documents submitted in support of Centennial's fee request, the Undersigned finds that additional reductions are needed to arrive at a reasonable fee award. Some reductions are warranted to account for block billing, excessive time spent on certain tasks (including the practice of billing in quarter-hour intervals), duplicative work, and clerical tasks.

---

[6]     There is a slight 0.25-hour discrepancy because the August 31, 2023 time entry for attorney Karcher lists 0.25 in the "Hours" column but the sum listed in the "Amount" column is $0.00 (as opposed to $625.00 times 0.25). [ECF No. 48-3, p. 21].

At the outset, the Undersigned notes that Plaintiff's timekeepers appear to have used minimum billing increments of 0.25 hours (or 15 minutes), regardless of the brevity of the task performed. For instance, on March 21, 2023, attorney Karcher billed 0.25 (15 minutes) for "[r]eceipt and review of Order [of] referral to Magistrate Judge." *Id*. at 18. The referral Order in question [ECF No. 25], was a simple **one sentence Order** which could not have taken 15 minutes to review. On the same day, paralegal Grubbs also billed 0.50 hours (30 minutes) for reviewing the *same* one-page referral order and "updat[ing] client's file accordingly." *Id.*

As illustrated in the above examples, applying this method of billing often results in excessive time billed. "In correcting for this kind of overbilling, district courts have cut the offending firm's fees across the board by anywhere between 10–30%." *B/E Aerospace, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 16-81293-CV, 2017 WL 9288915, at *4 (S.D. Fla. Aug. 29, 2017) (citing cases); s*ee also Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2019 WL 3383628, at *2 (M.D. Fla. June 13, 2019) (applying 12 percent across-the-board reduction for, among other things, "routine billing in quarter-hour increments"); *Transportation All. Bank Inc. v. Trax Air, LLC*, No. 616CV1773ORL40DCI, 2018 WL 4691245, at *8 (M.D. Fla. Sept. 10, 2018), *report and recommendation adopted*, No. 616CV1773ORL40DCI, 2018 WL 4680332 (M.D. Fla. Sept. 28, 2018) (applying a 10 percent across-the-board reduction for, among other things, "the use of .25-hour billing increments").

16

The billing records reflect other instances of duplicative time entries and excessive time spent on tasks. For instance, Centennial filed a three-page 90-day expiration notice, (two pages for the notice plus a one-page signature block). [ECF No. 26]. In total, attorney Karcher billed 1.00 hours for preparing this document. [ECF No. 43-3, p. 19 (billing 0.50 hours on May 9, 2023 for "Prep of 90 days notice to Court" and 0.50 hours on June 1, 2023 for "Draft/send 90 day Notice to Court")]. Paralegal Grubbs also billed 0.50 hours (30 minutes) for "receiv[ing] and update[ing] client's file" with the *same* three-page notice. *Id.*

Additionally, Plaintiff's timekeepers block-billed their time entries. "Block billing is the practice of including multiple distinct tasks within the same time entry." *Bioresource Tech., Inc. v. High*, No. 21-CV-60854, 2022 WL 4287599, at *4 (S.D. Fla. Aug. 8, 2022), *report and recommendation adopted*, No. 21-60854-CIV, 2022 WL 3907902 (S.D. Fla. Aug. 31, 2022) (citation and internal quotation marks omitted). "Block billing is impermissible because it frustrates the Court's ability to determine which portion of the fees billed at a particular time are recoverable." *Behav. Analyst Certification Bd., Inc. v. Rodriguez*, No. 1:21-CV-22834, 2022 WL 4468606, at *16 (S.D. Fla. July 29, 2022), *report and recommendation adopted as modified*, No. 21-22834-CIV, 2022 WL 4466621 (S.D. Fla. Sept. 26, 2022) (citing *Filippova v. Mogilevsky*, No. 18-80044-CIV, 2019 WL 1216150, at *6 (S.D. Fla. Feb. 14, 2019)).

For example, on May 24, 2022, attorney Karcher billed 1.75 hours for "[c]alls to Frank Kups, National Liquidators regarding Substitute Custodian; draft documents;

receipt of rate sheets." [ECF No. 48-3, p. 9]. Leaving aside the non-descript, inherently vague nature of "draft documents," because these tasks were grouped together in one entry, it is not possible to determine how much time was spent on each task and, in turn, whether that time was reasonable.

There are also instances of timekeepers billing for secretarial or clerical tasks. Attorney Karcher billed 0.25 hours on December 18, 2022 to "File Re-newed [sic] Summons." *Id*. at 13. Paralegal Grubbs billed 0.50 hours for creating a label and mailing a document. *Id*. at 18 ("Prepared USPS label and sent correspondence to Why Not registered agent"). These clerical tasks are not compensable. *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and **mailing**, updating lists and calendars, and **filing or e-filing documents**, should not be billed at a paralegal rate regardless of who performs them." (emphasis added)).

Similarly, on August 30, 2023, paralegal Hart billed 0.25 hours for "[d]ownload[ing] DE-39, Order GRANTING the Substitute Custodian's Unopposed Expedited Motion for Relief from Final Default Judgment, sent copy of order to attorneys and sav[ing] to client's file." [ECF No. 48-3, p. 21]. In addition to 15 minutes being an excessive amount of time for this task, downloading documents, providing copies to the attorney, and saving them to the file are clerical tasks which are not recoverable. *See*

*Tobinick v. Novella*, No. 14-80781-CV, 2017 WL 8809365, at *6 (S.D. Fla. Nov. 29, 2017), *report and recommendation adopted*, No. 9:14-CV-80781, 2017 WL 8809110 (S.D. Fla. Dec. 18, 2017) ("work that is primarily clerical in nature is not reimbursable").

Rather than make line-by-line reductions in hours, a court "may engage in 'an across-the-board cut' so long as it provides adequate explanation for the decrease." *Bivins*, 548 F.3d at 1350. Here, the Undersigned **respectfully recommends** that the District Court apply a twenty (20) percent reduction to Centennial's already-reduced attorney's fees to account for excessive time (including 15-minute billing intervals), block billing, duplicative work, and clerical work. *See, e.g.*, *M&M Sisters, LLC v. Scottsdale Ins. Co.*, No. 21-24081-CIV, 2022 WL 18717403, at *20 (S.D. Fla. Dec. 19, 2022), *report and recommendation adopted*, No. 21-24081-CIV, 2023 WL 2017104 (S.D. Fla. Feb. 15, 2023) ("recommend[ing] an across-the-board 20 percent reduction to the fees sought at the district court level to account for block billing, excessive time, duplicative entries, . . . and excessive estimated hours"); *Celasco v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-20818-CIV, 2020 WL 7493079, at *6 (S.D. Fla. Mar. 20, 2020) (reducing requested fees by 20 percent "to account for excessive attorney time spent on certain tasks"), *report and recommendation adopted*, 2020 WL 7492852 (S.D. Fla. Apr. 7, 2020); *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-CV-538-HES-JBT, 2016 WL 3407825, at *1 (M.D. Fla. June 16, 2016) (affirming magistrate judge's recommendation of a 20 percent reduction in the requested fees due to excessive number of hours billed).

In sum, Centennial should be awarded **$36,140.00** in attorney's fees:

| Timekeeper | Reduced Rates | Requested Hours[7] | Amount |
|---|---|---|---|
| Michael Karcher | $450.00 | 93.00 | $41,850.00 |
| Serena Witter | $375.00 | 0.50 | $187.50 |
| Luciene Grubbs | $125.00 | 21.50 | $2,687.50 |
| Janet Hart | $100.00 | 0.50 | $50.00 |
| Melissa Baum | $100.00 | 4.00 | $400.00 |
| | | **Subtotal** | $45,175.00 |
| | | **20% Reduction** | $9,035.00 |
| | | **Reduced Amount** | **$36,140.00** |

### 2.    Pre-Judgment Interest

Initially, Plaintiff sought $40,555.44 in pre-judgment interest, from the date of the default (January 22, 2022) through the date of the final judgment (August 3, 2023). [ECF No. 48, pp. 6–7]. Because certain variables were unexplained, the Undersigned provided

---

[7]    As noted above, Centennial's billing records reflect a total of 137.75 hours. [ECF No. 48-3, p. 22]. From this amount, Centennial *voluntarily* reduced its hours by $10,088.75, which consists of 18.25 hours. *Id.*; [ECF Nos. 48-3, ¶ 24 ("Upon reviewing the file and the time entries, 18.5 hours [sic] and $10,088.75 in fees have been deducted and removed from the requested fees."); 52, pp. 4–5 (chart)].

The 18.25-hour reduction is as follows: 7.75-hour reduction to attorney Karcher's hours; 0.50-hour reduction to attorney Witter's hours; 2.25-hour reduction to paralegal Grubb's hours; 0.75-hour reduction to paralegal Hart's hours, and the elimination of attorney Nicholas Zeher's hours (all 7.00 hours).

Plaintiff with an opportunity to explain its calculation. [ECF No. 51]. In its supplemental memorandum, Plaintiff "amend[ed] and reduce[d] the amount of pre-judgment interest being sought[.]" [ECF No. 52, p. 1]. Plaintiff now seeks to recover $9,531.20. *Id.* at 3.[8]

It explains that it used January 22, 2022 as the default date because Defendants' last payment was December 22, 2021 and cites to the affidavit from a Centennial employee and Centennial's Account Overview Report. *Id.* at 2 (citing [ECF Nos. 24-3; 24-4]). It also states that "[u]pon further analysis," it discovered that the $147,372.01 current payoff amount in the Account Overview Report already includes pre-judgment interest through January 30, 2023. *Id.* Therefore, Plaintiff now seeks additional pre-judgment interest from January 31, 2023 (as opposed to January 22, 2022) through the date of the Final Judgment, August 3, 2023, or 184 days. *Id.* at 2–3.

Plaintiff is entitled to an 18 percent interest rate because this is the amount set by the promissory note and it does not exceed the maximum allowed by Florida law. *See Singhal v. Unison Agreement Corp.*, No. 22-60656-CIV, 2023 WL 2734230, at *4 (S.D. Fla. Mar. 31, 2023) ("Florida has a civil usury statute that defines usury as charging more than 18 percent interest annually on a loan of $500,000 or less. § 687.02(1), Fla. Stat."); *Oakland E. Manors Condo. Ass'n, Inc. v. La Roza*, 669 So. 2d 1138, 1139–40 (Fla. 4th DCA 1996) ("We find merit in appellant's argument that the trial court erred when it refused to award pre-

---

[8]     Plaintiff's calculations for the revised requested prejudgment interest amount can be found at ECF No. 52, p. 3.

judgment interest at the rate of eighteen percent on all past due assessments. The bylaws specifically provided for unpaid assessments to bear interest at the "highest rate of interest . . . permissible under the usury laws of the State of Florida." The usury statute, section 687.02, Florida Statutes (1993), permits '18 percent per annum simple interest' as the highest rate of legal interest chargeable on the unpaid assessments in this case."). Here, the 18 percent interest rate amounts to a rounded daily interest rate of $51.80 ($105,045.35 in principal times 0.0004931507 in interest).

Because Plaintiff has explained its revised, reduced pre-judgment interest calculation and is contractually entitled to recover pre-judgment interest at a rate of 18 percent, the Undersigned **respectfully recommends** that Judge Scola award Plaintiff the revised requested amount of **$9,531.20** (184 days times the rounded daily interest rate of $51.80) in pre-judgment interest.

### 3.  Expenses

As noted above, Centennial's fee request includes $184.00 in expenses. [ECF No. 48-3, p. 22]. These expenses consist of $104.00 in "Lexis Nexus - Legal Research - Lexus Nexus" charges and $80.00 for "DLE Process Servers LLC, - Invoice No. 2022045072." *Id.* These expenses are listed on the last page of the billing records, but no vendor invoices were included in Plaintiff's submissions.

The Undersigned notes that the Court already awarded $80.00 to Plaintiff for service on the LLC. [ECF Nos. 47, pp. 9–10; 50]. To the extent this requested $80.00

expense is the same charge, Centennial cannot again recover for it. To the extent this amount is a charge for a *different* service, the Court should still deny Centennial's request because Centennial has provided no explanation (or even an invoice) for the expense. *See A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2019 WL 12265726, at *8 (S.D. Fla. June 25, 2019), *report and recommendation adopted*, No. 17-24223-CIV, Order [ECF No. 224] (S.D. Fla. Sept 27, 2019) (noting that certain costs, including expedited transcripts, were recoverable by contractual agreement, but recommending that they be denied because the movant failed to articulate how their recovery was reasonable).

Centennial also provides no explanation for what the Lexis Nexus charges are or why they were reasonably incurred. Without this explanation, the Undersigned cannot conclude that the expenses were reasonable and therefore recoverable.

In sum, the Undersigned respectfully **recommends** that the District Court **deny** the entire $184.00 expense amount.

## II.    Conclusion

For the reasons stated above, the Undersigned respectfully recommends that the District Court **grant in part and deny in part** Plaintiff's motion and award it **$36,140.00** in attorney's fees and **$9,531.20** in pre-judgment interest.

## III.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the

United States District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error, if necessary, in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on March 6, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record